United States District Court

For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8    KEITH JAMES MURPHY,                     No. C 04-5338 MHP (pr)

9              Petitioner,                   **ORDER DENYING PETITION FOR
                                             WRIT OF HABEAS CORPUS**
10        v.

11   G. J. GIURBINO, warden,

12             Respondent.
                                        /
13

14                          **INTRODUCTION**

15        Keith James Murphy, a prisoner at the Centinela State Prison, filed this pro se action

16   seeking a writ of habeas corpus under 28 U.S.C. § 2254.  This matter is now before the court

17   for consideration of the merits of the pro se habeas petition.  For the reasons discussed

18   below, the petition will be denied.

19                          **BACKGROUND**

20        Murphy shot and killed a man on October 26, 2001.  The facts of the crime have no

21   bearing on the claims asserted in the petition and thus are not discussed further.  The claims

22   asserted in Murphy's habeas petition concern the way in which a sentence enhancement for a

23   prior conviction was charged, as well as the sentence ultimately imposed.

24        Murphy was charged by information with one count of murder, see Cal. Penal Code

25   § 187(a).  CT 3-4.  The information further alleged that the offense was a serious felony

26   within the meaning of California Penal Code § 1192.7(c)(1) and that Murphy personally and

27   intentionally discharged a firearm, which proximately caused great bodily injury and death

28   within the meaning of California Penal Code § 12022.53(d).  In the part that matters here, the

United States District Court

For the Northern District of California

1   information also alleged that Murphy "was on or about June 12, 2000 in the Superior Court

2   of Sacramento County, in the State of California, convicted of a serious or violent felony, to

3   wit, assault with a firearm, a violation of section 245(a)(2) of the Penal Code, within the

4   meaning of Penal Code sections 667(d) and (e), and Penal Code sections 1170.12(b) and (c)."

5   CT 4.   (All further section references are to the California Penal Code unless otherwise

6   noted.)

7          A jury trial began on June 26, 2002, after the parties stipulated to a bifurcated trial on

8   the prior felony conviction allegation.  The jury found Murphy not guilty of first or second

9   degree murder but guilty on the lesser included offense of voluntary manslaughter.  The jury

10  further found true the allegation that Murphy had personally used a firearm.  The parties then

11  waived a jury trial on the bifurcated issue of the prior felony conviction and the jury was

12  discharged.

13         On the day set for the court trial on the prior conviction, the prosecutor moved to

14  amend the information to reflect that the prior felony conviction previously alleged under the

15  Three Strikes law was also going to be alleged as a serious felony under § 667(a), which

16  allowed for an extra 5-year enhancement.

17         Appellant objected to the amendment as untimely, largely on the ground that his jury
       waiver had been based on the unamended information.  The objection was overruled,
18     but the court permitted appellant to withdraw the previously entered waiver, so that a
       jury could decide the truth of the prior conviction.  Appellant then requested that the
19     same jury that rendered the verdict be "re-impanel[ed] . . .  if that is impossible then
       [appellant] is not requesting that a new jury be impaneled."  When the court denied
20     the request to reimpanel the original jury, appellant waived his right to a jury trial on
       the prior allegations.
21

22  Cal. Ct. App. Opinion, p. 2 (brackets and ellipses in source).   A bench trial was held, and the

23  court found true the sentence enhancement allegations for the prior conviction.  The court

24  denied a motion to strike the § 667(a) sentence enhancement and sentenced Murphy to a

25  total of 21 years in prison.  The 21-year sentence reflected the middle term of six years

26  doubled because of the prior strike conviction, plus four years as the middle term for the

27  personal use of the firearm sentence enhancement, plus five years under § 667(a).  Cal. Ct.

28  App. Opinion, p. 3 n.2.

2

United States District Court

For the Northern District of California

1    The parties appear to agree that California law allows a defendant to receive sentence

2 enhancements under both § 667(e) and § 667(a) for a single conviction.  For example, a

3 defendant with one qualifying prior felony conviction could have his determinate term

4 doubled under § 667(e) and receive an additional five year enhancement under § 667(a).  Not

5 all prior felony convictions result in sentence enhancements under both subsections,

6 however, because § 667(a) requires that the prior conviction be for a "serious" felony,

7 whereas § 667(e) does not.  (For convenience, the court refers to the original sentence

8 enhancement as being under § 667(e), although it was charged under § 667(d) and (e) as well

9 as the parallel provision in § 1170.12(b) and (c).)

10    Murphy appealed, contending that the late amendment of the information to allege an

11 additional enhancement term under § 667(a) was improper and violated his right to due

12 process.  His conviction was affirmed, and his petition for review was denied in 2004.  He

13 then filed this action, seeking a writ of  habeas corpus on the ground that "his right to the due

14 process of law required adequate notice of the specific sentence enhancement allegations that

15 were to be invoked to increase punishment for his crime; in the absence of such notice, the

16 court was without jurisdiction to impose a term under Penal Code section 667(a)."  Petition,

17 p. 5.  The court issued an order to show cause why the writ should not be granted.

18 Respondent filed an answer and petitioner filed a traverse.  The matter is now ready for a

19 determination on the merits of the petition.

20                    **JURISDICTION AND VENUE**

21    This court has subject matter jurisdiction over this habeas action for relief under 28

22 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged

23 conviction occurred in Humboldt County, California, within this judicial district.  28 U.S.C.

24 §§ 84, 2241(d).

25                              **EXHAUSTION**

26    Prisoners in state custody who wish to challenge collaterally in federal habeas

27 proceedings either the fact or length of their confinement are required first to exhaust state

28 judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

3

1    highest state court available with a fair opportunity to rule on the merits of each and every

2    claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not

3    dispute that state court remedies were exhausted for the claims asserted in the petition.

### STANDARD OF REVIEW

5         This court may entertain a petition for writ of habeas corpus "in behalf of a person in

6    custody pursuant to the judgment of a State court only on the ground that he is in custody in

7    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

8    The petition may not be granted with respect to any claim that was adjudicated on the merits

9    in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that

10   was contrary to, or involved an unreasonable application of, clearly established Federal law,

11   as determined by the Supreme Court of the United States; or (2) resulted in a decision that

12   was based on an unreasonable determination of the facts in light of the evidence presented in

13   the State court proceeding."  28 U.S.C. § 2254(d).

14        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

15   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

16   law or if the state court decides a case differently than [the] Court has on a set of materially

17   indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

18        "Under the 'unreasonable application' clause, a federal habeas court may grant the

19   writ if the state court identifies the correct governing legal principle from [the] Court's

20   decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at

21   413.  "[A] federal habeas court may not issue the writ simply because that court concludes in

22   its independent judgment that the relevant state-court decision applied clearly established

23   federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."

24   Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask

25   whether the state court's application of clearly established federal law was "objectively

26   unreasonable."  Id. at 409.

27

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

Resolution of Murphy's petition turns on answering two inquiries: (1) whether Murphy had a federally protected right to notice of the sentence enhancement, and (2) whether Murphy's sentence exceeded that allowed by state law because it was based on an allegation added to the charging document at a late date.

A.    No Federal Right To Notice Of Statutory Basis For Sentence Enhancement

The Sixth Amendment guarantees a criminal defendant a fundamental right to be clearly informed of the nature and the cause of accusation against him. See Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995).  To determine whether a defendant has received fair notice of the charges against him, the court looks first to the information, the principal purpose of which is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare a defense.  See James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994).  However, the federal constitution does not require the government to identify in the charging document the prior convictions it intends to use solely for sentencing purposes. See Almendarez-Torres v. United States 523 U.S. 224, 228 (1998) (indictment must set forth each element of the crime charged but "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime"); id. at 230 ("prior commission of a serious crime . . . is as typical a sentencing factor as one might imagine"); see also United States v. Pacheco-Zepeda, 234 F.3d 411, 414-15 (9th Cir. 2001).  The case of Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000), left intact the holding of Almendarez-Torres, and confirmed the Court's view that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.

Here, the prior conviction and a sentence enhancement flowing from it were identified in the information, and a second sentence enhancement flowing from the same prior conviction was added late in the proceedings.  Because Murphy had no federal constitutional right to notice of the prior conviction to be used for sentencing purposes or the statutory enhancements that would flow from it, it follows that the amendment to the

5

1  charging document to add an extra statutory enhancement based on the prior conviction

2  already alleged did not violate any federal constitutional right to notice of the charges.  No

3  federal constitutional violation would have occurred if the amendment to the information had

4  added a new conviction, and here the amendment was much less substantial as it only

5  exposed him to a longer total sentence based on the same prior conviction already made

6  known to Murphy through the original charging document.  The addition of a new sentence

7  enhancement statute by amendment of the information did not violate any federal

8  constitutional right Murphy possessed.

9  B.      Murphy's Sentence Was Not In Excess Of That Allowed By State Law

10         A person has a fundamental right not to be subjected to a sentence that exceeds that

11  allowed by state law.  The constitutional guarantee of due process is fully applicable at

12  sentencing.  See  Gardner v. Florida, 430 U.S. 349, 358 (1977) (Stevens, J.).   State

13  sentencing courts must be accorded wide latitude in their decisions as to punishment and a

14  federal court generally will not review a state sentence within statutory limits.  See Walker v.

15  Endell, 850 F.2d 470, 476 (9th Cir. 1987).  A state sentence may, however, violate due

16  process if it is in excess of that allowed by state law.  See id.; see also Marzano v. Kincheloe,

17  915 F.2d 549, 552 (9th Cir. 1990) (plea of guilty does not permit state to impose sentence in

18  excess of state law despite agreement of defendant to sentence).

19         Murphy claims that his sentence was not allowed by state law under the reasoning of

20  People v. Mancebo, 27 Cal. 4th 735, 41 P.3d 556 (Cal. 2002).  He urges that the charging

21  document could not be amended after the trial on the murder charge to add a new statutory

22  basis for an already-pled prior conviction because the late amendment deprived him of notice

23  and impeded his ability to prepare a defense (including his plea bargaining tactics and other

24  decision-making during the defense of his case).  He further urges that, because the late

25  amendment was impermissible, any sentence based on it was not authorized by state law and

26  therefore violated due process.  His argument requires consideration of the Mancebo case.

27

28

United States District Court
For the Northern District of California

1      Mancebo did not involve the same sentence enhancement statute at issue in Murphy's

2   case and instead involved the interplay between two different sentence enhancement statutes,

3   one of which had an explicit pleading and proof requirement.   The Mancebo defendant was

4   convicted of several sex crimes committed on different days against two different victims

5   during the commission of which the defendant personally used a gun.  The question in

6   Mancebo was whether the sentencing court could substitute in a new circumstance (i.e.,

7   multiple victims) for the circumstance (i.e., gun use) that had been pled and thereby sentence

8   the defendant under the One Strike sentencing scheme in Cal. Penal Code § 667.61.  The

9   California Supreme Court found that that was impermissible.  The statute explicitly required

10  the facts of any specified circumstance to be pled in the charging document and proven to the

11  trier of fact.  Mancebo, 27 Cal. 4th at 743.  The court determined that a different fact (i.e., the

12  existence of multiple victims in place of the allegation that a gun had been used) could not be

13  plugged in by the sentencing court to make the defendant eligible for sentencing under the

14  One Strike law.  See id. at 743-44.  The California Supreme Court also stated that it was

15  recognized that "a defendant has a cognizable due process right to fair notice of the specific

16  sentence enhancement allegations that will be invoked to increase punishment for his

17  crimes."  Id. at 747.  Putting the defendant on notice of the facts underlying the enhancement

18  was not sufficient to satisfy due process, although the court did not indicate whether it was

19  referring to state or federal constitutional requirement of due process.  See id. at 747-48.

20      Murphy raised his due process argument on direct appeal and the California Court of

21  Appeal rejected it in a reasoned decision.  The court stated several reasons for its decision.

22  First, it found Mancebo inapposite because it rested on the specific pleading requirement of a

23  different Penal Code section, i.e., § 667.61(f) and (i), which required that the particular

24  circumstances to support a longer sentence be alleged and proven.  Cal. Ct. App. Opinion, p.

25  4.   More importantly, unlike Murphy's case, the new circumstance plugged in by the

26  sentencing court had not been alleged in any charging document and was not adjudicated by

27  any trier of fact.  Second, the California Court of Appeal found that any potential harm that

28  may have flowed from the late amendment that occurred after Murphy's opportunity to

7

United States District Court

For the Northern District of California

1 negotiate a plea bargain had passed was harmless because of the severity of the charges and

2 sentencing exposure.  Id.  Before trial, Murphy was facing a murder charge (with potential

3 life imprisonment) with sentence enhancements for personal use of a firearm (ten year

4 enhancement) and a strike prior conviction (doubling of the base term).  He would have

5 faced a sentence as high as 50-to-life plus ten years without the § 667(a) allegation, versus

6 50-to-life plus fifteen years if the § 667(a) allegation had been included in the original

7 charging document.   The appellate court thought it "unlikely in the extreme that appellant's

8 plea negotiating posture would have been significantly altered by an earlier filing of the

9 667(a) enhancement, which added but five more years to the maximum he faced."  Cal. Ct.

10 App. Opinion, p. 4.  Third, the appellate court rejected the contention that the charging

11 document could not be amended after the jury delivered its verdict on the murder and had

12 been discharged.  The court explained that California Penal Code § 969a allowed for the

13 allegation of prior convictions to be added by amendment when, as here, the amendment to

14 add an additional enhancement was based on the same prior conviction already alleged.  "The

15 amendment added no new facts to be resolved, though it did increase appellant's maximum

16 possible sentence following the voluntary manslaughter conviction from 32 years to 37

17 years."  Cal. Ct. App. Opinion, p. 6.  The court noted that, after the amendment, Murphy was

18 allowed to reinstate the jury demand he earlier had waived but chose a bench trial instead.

19        The California Court of Appeal's rejection of Murphy's claim was not contrary to or

20 an unreasonable application of clearly established federal law as determined by the Supreme

21 Court.  Assuming that, for purposes of 28 U.S.C. § 2254(d), the Gardner case provides

22 sufficiently clear federal law that due process requires that a defendant not be given a

23 sentence in excess of that allowed by state law, there was no violation of that rule.

24        The state appellate court's determinations that it was permissible under state law for

25 the information to be amended after the jury verdict on the murder charge and that it was

26 permissible under state law to impose the § 667(a) sentence enhancement where it had been

27 pled in the amended information and found true by a trier of fact present a formidable

28 obstacle to habeas relief because this court must follow those determinations of state law.

8

United States District Court

For the Northern District of California

1   The state court's interpretation of state law, including one announced on direct appeal of the

2   challenged conviction, binds a federal court considering a habeas petition.  <u>Bradshaw v.</u>

3   <u>Richey</u>, 126 S. Ct. 602, 604 (2005); <u>Hicks v. Feiock</u>, 485 U.S. 624, 629 (1988).  In short, it is

4   difficult for a petitioner to prevail on a due process claim that the sentence was not allowed

5   under state law when this court is bound to follow the determination that the sentence was

6   allowed under state law.

7       The state appellate court also found that <u>Mancebo</u> was inapplicable to Murphy's case.

8   Even if the refusal to extend <u>Mancebo</u> to Murphy's case was not considered a determination

9   of state law binding on this court, Murphy would not prevail.  This court agrees with the

10  California Court of Appeal's distinguishing of <u>Mancebo</u> as involving a particular explicit

11  pleading requirement contained in a statute not at issue in Murphy's case and, more

12  importantly, the circumstance that supported the application of the harsher sentencing law

13  was never alleged or found true by a trier of fact.  By contrast, the single prior conviction that

14  supported both the original sentence enhancement under § 667(e) and the additional sentence

15  enhancement under § 667(a) for Murphy was pled and found true by a trier or fact.  Once it is

16  accepted that state law allowed the information to be amended after the murder verdict was

17  returned but before the trial on the truth of the sentencing enhancement allegations started,

18  Murphy's claim loses all force.  State law permitted him to receive a sentence enhanced

19  under both § 667(a) and § 667(e) because the statutory bases for the two enhancements were

20  mentioned in the charging document as amended and a trier of fact found true the necessary

21  allegations to support those enhancements.  Murphy's sentence did not exceed that which was

22  allowed by state law.  Murphy's total prison term was 21 years, comprised of 12 years for the

23  manslaughter conviction (which was the middle term of 6 years doubled because of the §

24  667(e) enhancement for the prior conviction), plus five years for the enhancement under §

25  667(a), plus four years for the firearm enhancement.    No due process violation occurred.

26  Murphy is not entitled to the writ of habeas corpus.

27

28

1

**CONCLUSION**

2          The petition for writ of habeas corpus is DENIED on the merits.   The clerk shall

3    close the file.

4          IT IS SO ORDERED.

5    DATED:   August 29, 2006

6                                                    Marilyn Hall Patel
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28